NOT FOR PUBLICATION                                                                                          CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARTIN WILLIAMSON, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 11-1659 (FSH) |
| v. | **OPINION & ORDER** |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | Date: May 11, 2012 |
| Defendant. |  |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff Martin Williamson's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**I. BACKGROUND**

    **A. Plaintiff's Medical and Vocational History**

        1. Vocational Background

Plaintiff is a 51 year-old male with no vocational training. (Tr. 11.) Due to his limited education[1] and alleged disabilities, Plaintiff previously held a position as a meat packer. (Tr. 11, 15.)

---

[1] The Administrative Law Judge ("ALJ"), Joel H. Friedman, stated that Plaintiff had "limited education (allegedly special education)." (Tr. 11.) Plaintiff is not able to produce proof that he was in special education classes. (Tr. 13.)

2.  Relevant Medical History

In 1995, Plaintiff was struck in the head with a baseball bat, which resulted in "losing sight [in] his left eye and hearing loss in his left ear." (Tr. 194.) Plaintiff filed for Social Security Income ("SSI") benefits on July 18, 2007, alleging an onset of his disability on October 18, 2000. (Tr. 145.)

On September 25, 2007, Dr. Bernard Sarn, a consultative examiner, determined Plaintiff had no vision in his left eye and limited vision in his right eye, which could be corrected. (Tr. 194-95.) Dr. Sarn opined that Plaintiff had a "visual disability." (Tr. 195.)

On October 10, 2007, Dr. Algernon Phillips, a state-agency review physician, completed a residual functioning capacity assessment by reviewing Plaintiff's treatment records. (Tr. 198-205.) Dr. Phillips found that Plaintiff's records did not establish any physical exertional limitations; that is, Plaintiff had no limitation on his ability to lift, stand, walk, sit, push, pull, or operate hand controls. (Tr. 199.) Dr. Phillips indicated that due to Plaintiff's sight in only one eye, he is limited in the positions that he may obtain. (Tr. 201-02.)

Plaintiff then saw Dr. Jennifer C. Figurelli on October 24, 2007. (Tr. 206-14.) She examined Plaintiff's cognitive functioning and memory. (*Id.*) She determined Plaintiff was able to shower, dress, cook food in the microwave and do his laundry as for his daily living activities. (Tr. 208.) Dr. Figurelli opined Plaintiff was oriented to time, place, and person, and his mood and affect were appropriate. (*Id.*) Describing Plaintiff's memory, Dr. Figurelli indicated that Plaintiff could recall three out of four words in five minutes, his responses to questions were logical, and he knew the name of the President and was able to discuss September 11, 2001 events, but that Plaintiff was not able to name the past President or the Mayor of Jersey City, where he resides. (*Id.*) Plaintiff achieved a verbal score of 68, a performance score of 76, and

full-scale IQ score of 69 on the Wechsler Adult Intelligence Scale-III test; the latter "falls within Extremely Low range of intellectual function." (*Id.*) Plaintiff achieved a working memory score of 74 on the Wechsler Memory Scale-III test, which indicated a Borderline Range, reflecting Plaintiff's ability to retain "auditory and visual-spatial information in temporary storage." (Tr. 209.) As a result, Dr. Figurelli determined that Plaintiff's working memory scores properly corresponded to his level of intellectual functioning. (Tr. 210.) Dr. Figurelli diagnosed Plaintiff with mild mental retardation, asthma, hypertension, hearing loss in the left ear, blindness in the left eye, positive PPD tuberculosis test and presbyopia.[2] (Tr. 211.)

On October 30, 2007, Dr. Alexander Hoffman examined Plaintiff. (Tr. 216-18.) Plaintiff presented a history of hypertension but had not had any hypertension-related complications. (Tr. 216.) Plaintiff had experienced "mild bronchial asthma" since his youth due to his smoking habits. (*Id.*) At the time of the examination, Plaintiff continued to smoke about 1/2 to 1 pack of cigarettes a day, and used an "albuterol inhaler" every so often. (*Id.*) Dr. Hoffman indicated Plaintiff suffered from an "occasional back problem with low back pain;" however, Plaintiff had not had any particular treatment besides pain medication. (*Id.*) After completing a physical examination, Dr. Hoffman opined that Plaintiff "walk[ed] with normal gait, ha[d] no difficulty getting on and off the examining table,"  Plaintiff also showed full range of motion in his knees, and had "quite good" upper body strength. (Tr. 217.)

Also on October 30, 2007, Dr. Benito Tan completed a Psychiatric Review of Plaintiff. (Tr. 228.) On the evaluation form, Dr. Tan marked: (1) moderate limitation in daily activities; (2) moderate limitation in social functioning; and (3) moderate difficulties in maintaining concentration, persistence, or pace. (*Id.*) Dr. Tan also determined Plaintiff did not have any

---

[2] Dr. Figurelli's diagnostic impression also included a history of using cocaine. (Tr. 211 (providing "r/o cocaine abuse").)

3

episodes of decompensation. (*Id.*) Dr. Tan then concluded Plaintiff "can follow simple commands[,] preferably verbal, can maintain CPP [Concentration Persistence and Pace], [and he is limited to] social interaction in a low demand work-like setting." (Tr. 244.)

On November 23, 2007, Dr. A.M. Pirone completed a physical residual functional capacity assessment. (Tr. 246.) Dr. Pirone opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds and could sit, stand and/or walk for a total of six to eight hours. (Tr. 247.) Dr. Pirone further determined that Plaintiff had environmental limitations and should avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. (Tr. 250.)

**B. The Disability Standard and the ALJ's Decision**

    1. <u>The Statutory Standard for a Finding of Disability</u>

A person is technically disabled under the Social Security Act ("SSA") if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A person will be considered disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

4

Finally, the SSA defines work that exists in the national economy as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

In determining disability claims, the commissioner applies a five-step procedure according to 20 C.F.R. §§ 404.1520, 416.920 and *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999). The steps are explained as follows:

Step One: Substantial Gainful Activity  The Commissioner first looks to a claimant's current employment situation and considers whether such employment constitutes substantial gainful activity. Substantial here means the employment requires "significant physical [or] mental activities." 20 C.F.R. § 416.972. Further, even part-time or inconsistent work can still be considered substantial. *Id.* Gainful work is "work activity that you do for pay or profit." *Id.* If the claimant is currently engaged in substantial gainful activity, he or she will not be found disabled and consideration of any medical condition is unnecessary. 20 C.F.R. § 416.920(b).

Step Two: Severe Impairment  If the claimant is not engaged in substantial gainful activity, he or she must then demonstrate the existence of a severe impairment. A "severe impairment" is an impairment "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities." 20 C.F.R. § 416.920(c). If the claimant is unable to present a severe impairment, or combination of impairments considered severe, he or she will not be found disabled. *Id.*

Step Three: Listed Impairment  If the claimant is able to demonstrate a severe impairment, the Commissioner next determines if the impairment meets or equals an impairment listed on the Listing of Impairments in 20 C.F.R. § 404, subpt. P, app. 1. If the claimant has such

5

an impairment, he or she is found disabled. If not, the Commissioner proceeds to the fourth step. 20 C.F.R. § 416.920(d).

Step Four: Residual Functioning Capacity (RFC)  In the fourth step, the Commissioner decides whether, despite his or her impairment, the claimant still possesses the Residual Functioning Capacity[3] ("RFC") to perform his past relevant work. If so, the claimant is found not disabled and the inquiry is at an end. If not, the Commissioner then proceeds to the fifth step. 20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work  If the claimant is unable to perform his or her past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he or she is able to make an adjustment to other work. If he or she cannot perform other work, the claimant is found disabled. 20 C.F.R. § 416.920(g).

This five-step analysis has a shifting burden of proof. *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). For the first four steps, the claimant bears the burden of persuasion. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the analysis reaches the fifth step, however, the Commissioner then bears the burden of proving that the claimant is able to perform other work that is available in the national economy. *Id.* at 142. "The claimant is entitled to disability benefits only if he is not able to perform other work." *Id.* (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

2.   The ALJ's Decision

Upon review of the entire record, the Administrative Law Judge, Joel H. Friedman,

---

[3]   Residual Functioning Capacity is the claimant's ability to work on a sustained basis despite his physical or mental limitations. The RFC determination is not a decision as to whether a claimant is disabled, but it is used as the basis for determining the particular types of work a claimant may be able to perform despite his or her impairment(s). *See* 20 C.F.R. § 416.945.

6

proceeded through the five-step analysis. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since he filed his application on July 18, 2007. (Tr. 11.) At step two, the ALJ determined that Plaintiff suffered from multiple severe impairments: "degenerative disc disease; Spondylosis; hypertension; blindness in one eye; hearing impairment; organic mental disorder." (*Id.*) At step three, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet or equal any of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1. (*Id.* at 12-13.)

At step four, the ALJ concluded that Plaintiff had the RFC to perform light work with some limitations. The ALJ also concluded Plaintiff "is unable to perform any past relevant work" because Plaintiff's previous work exceeded his RFC. (Tr. 13-14.) At step five, after considering the Plaintiff's age, education, work experience and RFC and seeking the input of a vocational expert, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that the claimant [Plaintiff] can perform." (*Id.* at 15) (citing 20 C.F.R. § 416.969). As a result, the ALJ found the Plaintiff "has not been under a disability, as defined in the Social Security Act." (*Id.* at 16.)

### C. Standard of Review

This Court must review the ALJ's factual findings to determine whether the administrative record contains substantial evidence for such findings. 42 U.S.C.A. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based

on the record.  *Simmons v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).  "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."  *Snee v. Sec. of Health and Human Srvcs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

## II. DISCUSSION

Plaintiff contends that the ALJ erred because the ALJ's findings are not supported by substantial evidence in the record and he did not sufficiently articulate his reasoning or give adequate weight to the evidence.  Specifically, Plaintiff argues that:  (1) the ALJ improperly evaluated Plaintiff's credibility and the medical evidence; (2) the ALJ failed to consider Plaintiff's impairments in combination; and (3) the ALJ failed to include all of Plaintiff's limitations when posing hypothetical questions to the vocational expert.  The Court will address each argument in turn.

<u>1. Whether the ALJ properly evaluated Plaintiff's credibility and the medical evidence</u>

Plaintiff contends that the ALJ "failed to give proper credence to the complaints of Mr. Williamson concerning his headaches, mental impairments including, *inter alia*, mental retardation, cognitive deficits, and memory loss, hypertension . . . and pain, limitation of motion and function."  (Pl.'s Br. at 14.)  Particularly, Plaintiff alleges:  (1) the ALJ did not properly credit the Plaintiff's complaints; and (2) the ALJ improperly evaluated the medical evidence.  (*Id.*)  In evaluating medically determinable impairments and the extent to which they limit a claimant's capacity to work, the Commissioner is required to consider "all reasonable evidence . . . including statements from [the claimant]."  20 C.F.R. §§ 416.927(c), 404.1529(c).  In addition, the Commissioner must consider the claimant's history, laboratory findings, statements

8

from treating and non-treating sources, and other medical opinions on the existence and severity of claimant's pain. 20 C.F.R. § 404.929(c). Subjective complaints of symptoms and disability must be substantiated by medical evidence. 42 U.S.C. § 423(d); *Pearson v. Comm'r of Soc. Sec.*, 380 F. Supp. 2d 496, 508 (D.N.J. 2005).

Plaintiff claims the ALJ did not properly credit Plaintiff's testimony. (Pl.'s Br. at 14.) The ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Tr. 14.) For example, Plaintiff testified at the administrative hearing that he could not stand or sit for more than thirty minutes at a time due to back pain, and that he found housework and grocery shopping difficult due to problems with his vision. (*Id.* at 41-42). The other evidence adduced at the hearing, however, contradicted this testimony. (*See id.* at 163-67.) For instance, according to Dr. Figurelli's report, Plaintiff stated he "showers, dresses and cooks something in the microwave. Then he goes outside and sit[s] on the porch. After a while he either visits with family or goes inside and watches television . . . ." (*Id.* at 208.) Furthermore, Plaintiff's testimony at the hearing was contradicted by his own answers to a questionnaire he filled out when filing for Social Security Income, which corroborated Dr. Figurelli's report and indicated that Plaintiff prepared his meals, did his laundry, traveled independently, and shopped for groceries. (Tr. 163-67.) In short, the ALJ had substantial evidence to support his findings that Plaintiff's testimony was not credible, and to rely instead on other medical evidence. (Tr. 14.)

Plaintiff further alleges that the ALJ did not properly evaluate certain of the medical evidence provided by Drs. Figurelli, Sarn or Pirone. (Pl.'s Br. at 14.) First, Plaintiff alleges that the ALJ failed to discuss Dr. Figurelli's report, which indicated Plaintiff is unable to handle his

9

finances.  (*Id.* at 16 (citing Tr. 211-14).)  However, a questionnaire completed by Plaintiff demonstrated that Plaintiff was able to pay bills and count change.  (Tr. 166.)  Moreover, Dr. Figurelli's assertion was not entitled to controlling weight since Plaintiff only saw Dr. Figurelli once, on a consultative basis.[4]  *See* 20 C.F.R. § 416.927(d)(2) (giving "more weight to opinions from your treating sources").

      Second, Plaintiff alleges Dr. Bernard Sarn's evaluation was not given proper weight because Dr. Sarn opined that Plaintiff had a visual disability.  (Pl.'s Br. at 16.)  Dr. Sarn's determination, however, is not controlling for the same reasons as Dr. Figurelli's opinion—it was the result of a single consultation.  Further, Dr. Sarn's opinion as to the ultimate issue of whether Plaintiff has a visual disability is not entitled to significant weight, because the Commissioner determines whether the claimant has a disability under the Act.  *See Zonak v. Comm'r of Soc. Sec.*, 290 Fed. App'x 493, 497 (3d Cir. 2008); 20 C.F.R. § 416.927(e)(1).  Furthermore, as explained below, the ALJ clearly did consider Plaintiff's visual limitations in his opinion.

      Third, Plaintiff argues that Dr. A.M. Pirone's evaluation should not be given any "credence" due to Dr. Pirone's determination that Plaintiff had "no visual limitations."  (Pl.'s Br. at 16 (citing Tr. 246-53).)  The ALJ, however, did not afford any weight to Dr. Pirone's findings that Plaintiff had "no visual limitations."  (Tr. 13.)  In fact, the ALJ stated that Plaintiff did have visual limitations, and explained that "claimant has the residual functional capacity to perform light work with some exceptions . . . .  He has limited depth perception and visual field due to his

---

[4]    20 C.F.R. § 416.927, "Evaluating opinion evidence," provides how the ALJ will review a list of factors to establish the appropriate weight of medical opinions.  The list includes:  (1) treatment relationship; (2) length of the treatment relationship and the frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability; and (5) consistency.  20 C.F.R. § 416.927(d)(1)-(5).

10

monocular vision and must avoid unprotected heights, dangerous machinery, ladders, ropes and scaffolds." (*Id.*) Plaintiff's argument as to Dr. Pirone is therefore without merit.

For the reasons described above, the ALJ did not err in evaluating Plaintiff's credibility or the opinions of Drs. Figurelli, Sarn, and Pirone.

2. Whether the ALJ failed to properly consider the Plaintiff's impairments

At step three of the five-step analysis, the ALJ must determine whether the impairments meet the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In this case, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 12.) Plaintiff, however, contends that he meets Listings 12.05, 12.02 or has a combination of impairments that meet or equal one of the listed impairments. (Pl.'s Br. 18-22.) The Court will discuss each in turn.

    a. Listing 12.05

Listing 12.05 provides: "Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. 404, subpt. P, app. 1. Plaintiff has the burden of proof to show that his onset was before the age of 22. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)) ("The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five."). The ALJ stated in his decision that "there is no evidence that the claimant had the required IQ prior to the age of 22" because Plaintiff failed to produce his school records or any other documentation. (Tr. 13.) Further, Plaintiff suffered from a "head

11

injury in 1995, as well as a history of cocaine abuse since the age of 24 (Ex. B3F), both of which could have resulted in the loss of IQ since the age of 22." (Tr. 13.)  Plaintiff correctly notes that some courts have employed a rebuttable presumption in certain cases that mental retardation existed before the age of 22.  *See, e.g.*, *Williams v. Sullivan*, 970 F.2d 1178 (3d Cir. 2003).  However, the Third Circuit has explained that such a presumption is inappropriate where there is evidence "of a traumatic event that might have induced mental retardation at a later stage of life."  *Markle v. Barnhart*, 324 F.3d 182, 188-89 (3d Cir. 2003) (distinguishing *Williams*).  In the present case, Plaintiff's head injury was an intervening traumatic event, so Plaintiff was not entitled to a presumption that his mental retardation occurred before he was 22.  As a result, Plaintiff did not meet his burden of proof.

      b.  Listing 12.02

Plaintiff argues that if the onset of his mental condition was not apparent before the age of 22, then, in the alternative, he meets Listing 12.02, Organic Mental Disorders. (Pl.'s Br. at 19-21).   Plaintiff has demonstrated an organic mental disorder if he satisfies the requirements listed "in both A and B, or when the requirements in C are satisfied." 20 C.F.R. § 404, subpt. P, app. 1.  The ALJ found that Plaintiff did not meet at least two of the restrictions under paragraph B, (Tr. 13), which requires Plaintiff to have "marked difficulties" or "marked restrictions" in at least two of the four categories.  20 C.F.R. § 404, subpt. P, app. 1.  Plaintiff asserts that Dr. Figurelli's report indicates the criteria in paragraph A and B or C meet the required the level of severity.  (Pl's Br. at 19-21.)  According to Dr. Algernon Phillip's report, however, Plaintiff has only *moderate* restrictions with daily living activities and *moderate* difficulties with social functioning. (*Id.*)   Further, Plaintiff has not suffered from any episodes

12

of decompensation,[5] the fourth factor in paragraph B, and, therefore, it does not apply. (Tr. 13.) According to Dr. Tan's report, the evidence did not establish the presence of "C" criteria. (Tr. 13, 239.) Because of the findings of Drs. Phillip and Tan, there was substantial evidence to support the ALJ's findings that Plaintiff did not meet the criteria set forth in Listing 12.02.

      c. <u>Combination of Impairments</u>

Plaintiff claims that the ALJ did not properly evaluate whether the Plaintiff's combination of impairments meets or equals one of the listed impairments. Plaintiff, however, fails to assert in his brief how the ALJ failed to show how the combination of impairments does equal a listed impairment.[6] (Pl. Br. at 22.) When reviewing the ALJ's decision, this Court must simply examine the record to determine whether the ALJ had substantial evidence to support his findings. If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. *Simmons*, 807 F.2d at 58.

The record demonstrates that the ALJ considered and rejected Plaintiff's contention that he had a combination of impairments that meets or equals a listed impairment. (Tr. 12.) The record contains substantial evidence to support the ALJ's findings. The ALJ's analysis explicitly examined how Plaintiff did not meet the listed impairments, (Tr. 13), and set forth a RFC finding

---

[5]   "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. § 404, subpt. P, app. 1.

[6]   Plaintiff's brief merely recites the legal standard for finding a combination of impairments, and asserts that "[t]he Administrative Law Judge misinterpreted the medical record and found no evidence where, in fact, it did exist." Plaintiff fails to demonstrate *how* he meets the standard.

that included both exertional and non-exertional limitations, (Tr. 14-15).  Moreover, Plaintiff has failed to identify any combination of impairments that is disabling, or how such a combination meets or exceeds a listed impairment, and it is not obvious to the Court.  *Cf. Williams v. Barnhart*, 87 F. App'x 240, 243 (3d Cir. 2004) (Plaintiff failed to explain how the ALJ should have considered a combination of impairments differently).  Instead, Plaintiff merely asserts that some combination exists.  (*See* Pl. Br. at 22.)  Where there was substantial evidence to support the ALJ's decision, and where Plaintiff has failed to identify how the ALJ supposedly erred, the Court must uphold the decision.

      3.   Whether the ALJ posed proper questions to the vocational expert

At step five of the analysis, the Commissioner bears the burden of proving that the claimant is able to perform other work that is available in the national economy.  *Bowen*, 482 U.S. at 142.  Pat Green, a vocational expert, testified at the administrative hearing.  (Tr. 49.) Plaintiff contends that the ALJ did not pose proper hypothetical questions that accurately portrayed Plaintiff's limitations to Green.  (Pl.'s Br. at 22-23.)  Specifically, Plaintiff alleges the ALJ should have posed a question regarding Plaintiff's ability to handle large objects but not small ones.  (*Id.*)

While the questions posed to a vocational expert must "accurately portray the claimant's individual physical and mental limitations," *Schonewolf v. Callahan*, 972 F. Supp. 277, 289 (D.N.J. 1997) (citing *Podedworny v. Harris*, 745 F. 2d 210 (3d Cir. 1984)), the "ALJ [does not need] to submit to the vocational expert every impairment alleged by the claimant," *Rutherford v. Barnhart*, 399 F.3d 546, 555 (3d Cir. 2005).  Here, the ALJ properly conveyed to the expert the Plaintiff's age, education, work experience and residual functional capacity.  (*See* Tr. 15-16.) The ALJ also posed questions to the vocational expert that included Plaintiff's additional

14

limitations such as his visual impairment, limited hearing, and his inability to work with unprotected heights, dangerous machinery, ladders, or ropes. (Tr. 15.) In short, the ALJ communicated a thorough portrayal of Plaintiff's physical limitations. That expert determined that Plaintiff could qualify as a garment sorter, hand packager or a final assembler. (*Id.*) The ALJ therefore posed proper hypothetical questions to the vocational expert, and the Commissioner carried his burden.

### III. CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial evidence. Accordingly, this Court **AFFIRMS** the Commissioner's decision to deny Plaintiff Social Security Benefits.

Therefore, **IT IS** on this 11th day of May, 2012, hereby

**ORDERED** that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

**s/ Faith S. Hochberg**_____
Hon. Faith S. Hochberg, U.S.D.J.
